******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BLUMBERG ASSOCIATES WORLDWIDE, INC. *v.*
BROWN AND BROWN OF CONNECTICUT,
INC., ET AL.
(SC 18911)

Rogers, C. J., and Palmer, Zarella, Eveleigh and McDonald, Js.*

*Argued March 13, 2013—officially released February 18, 2014*

*Daniel J. Klau*, with whom, on the brief, was *H. James Pickerstein*, for the appellant (plaintiff).

*Mark D. Alexander*, with whom, on the brief, was *John M. Tanski*, for the appellees (defendants).

*Opinion*

PALMER, J. This case requires us to determine when a reviewing court properly may raise and decide an issue that was not raised by the parties. The plaintiff, Blumberg Associates Worldwide, Inc., brought this action against the defendants, Brown and Brown of Connecticut, Inc. (Brown & Brown), and Brown and Brown, Inc. (parent company), alleging, inter alia, that the defendants had breached a contract between the parties by terminating the contract after the plaintiff failed to comply with a contract condition due to conduct by the defendants that prevented compliance by the plaintiff. After the trial court granted the defendants' motion for summary judgment and rendered judgment thereon, the plaintiff appealed to the Appellate Court, which affirmed the trial court's judgment. *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 132 Conn. App. 85, 102, 30 A.3d 38 (2011). We then granted the plaintiff's petition for certification to appeal to this court on the issue of whether the Appellate Court properly had upheld the trial court's decision to grant the defendants' motion for summary judgment, albeit on grounds not raised by the defendants. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 303 Conn. 923, 34 A.3d 395 (2012). The plaintiff contends that (1) the Appellate Court exceeded its authority by affirming the trial court's judgment on the basis of an issue that the defendants had neither raised in the trial court nor presented as an alternative ground for affirmance on appeal, namely, whether the plaintiff's claim that the defendants had prevented the plaintiff from complying with a contract condition failed as a matter of law because the allegedly hindering conduct occurred before the contract existed, and (2) if the Appellate Court properly raised that issue sua sponte, it incorrectly determined that the plaintiff's claim failed as a matter of law.

We conclude, with respect to the propriety of a reviewing court raising and deciding an issue that the parties themselves have not raised, that the reviewing court (1) must do so when that issue implicates the court's subject matter jurisdiction, and (2) has the discretion to do so if (a) exceptional circumstances exist that would justify review of such an issue if raised by a party, (b) the parties are given an opportunity to be heard on the issue, and (c) there is no unfair prejudice to the party against whom the issue is to be decided. Because each of these latter three conditions was satisfied in the present case, we reject the plaintiff's claim that the Appellate Court exceeded its authority in resolving the plaintiff's appeal on the basis of an issue that the defendants had not raised. We also conclude that the Appellate Court properly decided that issue. Accordingly, we affirm the judgment of the Appellate

Court.

The opinion of the Appellate Court sets forth the following facts and procedural history. "Prior to February, 2004, the plaintiff operated as an affiliate of Blumberg Associates, Inc., a company engaged in the insurance business in Connecticut and throughout the northeastern United States. The plaintiff had been created in 1998 for the purpose of pursuing a business opportunity as an insurance provider to Subway restaurant franchisees. During the development of this business opportunity, Blumberg Associates, Inc., used the plaintiff for a variety of other purposes, including selling insurance to customers in other states.

"On or about February 1, 2004, the parent company purchased Blumberg Associates, Inc., pursuant to an asset purchase agreement. For the next two months, Blumberg Associates, Inc., continued to operate out of its business address at 433 South Main Street in [the town of] West Hartford. Thereafter, the parent company transferred all of the assets it had acquired from Blumberg Associates, Inc., to 375 Willard Avenue in [the town of] Newington, the business address of Brown & Brown. The insurance licensing files of the plaintiff were included among the assets physically transferred to 375 Willard Avenue.[1]

"On March 19, 2004, Anne F. Pinto, an employee of Brown & Brown and former employee of Blumberg Associates, Inc., submitted, on behalf of Brown & Brown, an application for an insurance license to the [state Department of Insurance] (department). Along with the application, Pinto included a letter that requested that the department 'change [its] records to reflect [the] new address' and then listed the address of 375 Willard Avenue in Newington. The letter was written on stationery with the letterhead of Blumberg Associates, Inc., and the plaintiff, and it did not identify specifically whose address should be changed [in] the department's records. On June 23, 2004, the department changed the address in its records for both Blumberg Associates, Inc., and the plaintiff to 375 Willard Avenue in Newington [even though the plaintiff's business address had not, in fact, changed].[2]

"Also in June, 2004, the plaintiff sought access to its licensing files [which] had been physically transferred to Brown & Brown. Brown & Brown denied having any licensing files belonging to the plaintiff. [Brown & Brown] also denied the plaintiff's request to conduct an inspection of [Brown & Brown's] business office to locate the files.

"In December, 2005, approximately two months prior to the expiration of the plaintiff's insurance license, the department mailed an insurance license renewal form (renewal notice) to the plaintiff at 375 Willard Avenue in Newington. According to the records of the department,

the renewal notice subsequently was returned to the department as unable to forward.[3] On January 31, 2006, the plaintiff's license expired." (Footnotes altered.) *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 132 Conn. App. 90–91.

"On July 19, 2006, the plaintiff and the defendants entered into a written contract entitled the 'Subway Program Agreement.' According to the contract, the plaintiff made introductions and facilitated communications that were instrumental in leading to Brown & Brown being designated as a gold standard insurance agent by Doctor's Associates, Inc. As a result of that designation, Brown & Brown was able to offer certain insurance services to Subway restaurant [franchisees]. As consideration for the plaintiff's facilitation services, Brown & Brown agreed to pay to the plaintiff a percentage of the commissions and fees that it received from selling insurance services to Subway restaurant franchisees.

"By letter dated February 26, 2008, the defendants notified the plaintiff that they were terminating the contract. The letter stated that Brown & Brown was entitled to terminate the contract for cause pursuant to § 4 (b) (i) (B) of the contract upon 'the loss or suspension of [the plaintiff's] resident insurance license in its state of domicile, if such loss or suspension is not cured within ninety (90) days of such loss or suspension . . . .' The letter went on to state that cause existed to terminate the contract pursuant to § 4 (b) (i) (B) because the plaintiff's license in the state of Connecticut, its domicile, had been 'canceled on January 31, 2006,' and the 'loss . . . [had] not [been] cured within [ninety] days of that event.'[4]

"The plaintiff commenced the present action by way of a five count complaint filed on October 10, 2008. In the complaint, the plaintiff alleged: (1) breach of contract against Brown & Brown in count one; (2) unjust enrichment against Brown & Brown in count two; (3) quantum meruit against Brown & Brown in count three; (4) violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., against Brown & Brown in count four; and (5) breach of guaranty against the parent company in count five." (Footnotes altered.) Id., 87–88. With respect to the count alleging breach of contract, the plaintiff claimed that (1) by failing to forward the renewal notice to the plaintiff, Brown & Brown had "breached the terms of paragraph 10 [of the contract], '[f]urther [a]ssurances' . . . and caused the temporary suspension of [the plaintiff's] license,"[5] (2) the defendants' reason for terminating the contract did not "constitute a material, actionable breach of the [contract], and Brown & Brown therefore [had] breached the [contract]," (3) Brown & Brown's failure to pay the plaintiff revenues due under the contract

constituted a breach of contract, and (4) Brown & Brown's failure to deliver certain financial information when due constituted a breach of contract.

"On January 22, 2009, the defendants filed a motion to strike all five counts of the complaint, which the court granted as to count four . . . but denied as to the remaining counts."[6] *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 132 Conn. App. 88. Thereafter, the defendants filed a motion for summary judgment on each of the surviving counts of the complaint. With respect to the plaintiff's breach of contract count, the defendants contended, inter alia, that Brown & Brown's alleged failure to forward the renewal notice to the plaintiff could not have resulted in a breach of the further assurances provision because it occurred more than eight months before the parties entered into the contract. In its opposition to the motion for summary judgment, the plaintiff did not expressly claim that there was a genuine issue of material fact as to whether the defendants had breached the further assurances provision of the contract. Instead, the plaintiff argued that the defendants had prevented it from renewing its license, thereby excusing the plaintiff from satisfying that contract condition under the prevention doctrine.[7] In addition, the plaintiff contended that the trial court reasonably could conclude that the defendants had exercised their "discretion" to terminate the contract in bad faith and that there was a genuine issue of material fact, namely, whether the termination provision was enforceable under principles of waiver and estoppel. In their reply to the plaintiff's opposition, the defendants contended, inter alia, that the doctrine of prevention was inapplicable "because Brown & Brown has not brought a breach of contract [claim] that would require [the plaintiff] to assert such a defense."[8]

In granting the defendants' motion for summary judgment on the breach of contract claim, the trial court rejected (1) the plaintiff's claim of bad faith because the plaintiff had not alleged bad faith in its complaint, (2) the plaintiff's waiver claim because the contract required that any waiver must be in writing, and (3) the plaintiff's estoppel claim because the plaintiff presented no evidence that the defendants had done anything to induce the plaintiff to believe that it was licensed. The court also rejected the plaintiff's claim under the prevention doctrine, reasoning that, because the plaintiff's "license status was a matter of public record, as a matter of law, no conduct by [the defendants] caused [the plaintiff] not to be able to know the status of its own license." Finally, the court concluded that Brown & Brown could not have breached the further assurances provision of the contract because, even if it failed to forward the renewal notice to the plaintiff, that conduct occurred before the parties entered into the contract.[9]

After the trial court rendered judgment for the defen-

dants, the plaintiff appealed to the Appellate Court. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 132 Conn. App. 86. The plaintiff argued, inter alia, that the trial court "improperly decided that the plaintiff's claim of prevention of performance failed as a matter of law because the court erroneously concluded that the plaintiff was required to show that Brown & Brown's actions were the sole cause of the plaintiff's failure to maintain its license." Id., 93. Following oral argument, the Appellate Court, sua sponte, ordered the parties to submit supplemental briefs "addressing [the issue of] whether the plaintiff's claim of breach of contract based on Brown & Brown's alleged failure to forward the renewal notice failed as a matter of law because the alleged conduct occurred prior to the date [on] which the parties entered into the [contract]." Id., 94. In its supplemental brief, the plaintiff objected to the Appellate Court's supplemental briefing order on the ground that the defendants had "never contended that the [prevention] argument should fail as a matter of law because it relie[d] on conduct that predate[d] the parties' execution of the [contract]" and that the Appellate Court should not raise arguments that the parties "did not raise [in the trial court]." *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, Conn. Appellate Court Records & Briefs, May Term, 2011, Plaintiff's Supplemental Brief p. 1. The plaintiff further asserted that it had "made a number of strategic decisions in this case, including the selection of issues on appeal, in reliance [on] the arguments the defendants did, and did not, raise [in the trial court]"; id., pp. 1–2; and, by way of example, the plaintiff stated that it "would have challenged [on appeal] the trial court's ruling on its unjust enrichment claim if the defendants had mounted a legal, as opposed to a factual, challenge to [the plaintiff's prevention] argument." Id., p. 2 n.2. Although unable to point to any authority in support of its position, the plaintiff also contended that conduct that occurs before a contract comes into existence can constitute a hindrance under the prevention doctrine. Id., p. 3; see also id., pp. 5–7. The plaintiff further maintained that the Appellate Court could avoid deciding that issue because, as the result of the asset purchase agreement pursuant to which the parent company had purchased the plaintiff's affiliate, Blumberg Associates, Inc., there was a "contractual relationship" between the plaintiff and the defendants at the time of the alleged hindrance. Id., pp. 3–4. Finally, the plaintiff claimed that certain equitable principles warranted the conclusion that it should be permitted "to prove its entitlement to relief at trial even if the court decides that the [prevention] doctrine does not excuse the temporary lapse of [the plaintiff's] insurance license." Id., p. 8. In their supplemental brief, the defendants again argued, inter alia, that they could not have breached the further assurances provision of the contract before the contract

came into existence. Id., Defendants' Supplemental Brief pp. 4–5.

Thereafter, the plaintiff filed a motion for permission to file a reply to the defendants' supplemental brief in which it argued that a reply was necessary to correct "serious errors" in the defendants' brief. Specifically, the plaintiff contended in the proposed reply brief that it had "never argued that the defendants' [precontractual] conduct constituted a breach of the contract. The argument [was] always . . . that such conduct, as an equitable matter, *excused* the temporary expiration of [the plaintiff's] insurance license." (Emphasis in original.) The plaintiff further argued that it initially claimed that the defendants had breached the further assurances provision of the contract but that it abandoned that claim in its opposition to the defendants' motion for summary judgment. In opposition to the plaintiff's motion for permission to file a reply to the defendants' supplemental brief, the defendants contended that they understood the Appellate Court's order for supplemental briefing to relate to the plaintiff's allegation that Brown & Brown had breached the further assurances provision of the contract. They further contended that there was no "distinction between the breach of an express contractual provision and conduct that excuses performance under the doctrine of prevention. Conduct that legally 'hinders' the other party's performance *is* a breach of the contract, and that is why it operates to excuse performance."[10] (Emphasis in original.) The Appellate Court denied the plaintiff's request to file a reply to the defendants' supplemental brief.

The Appellate Court ultimately agreed with the defendants that conduct that occurred before the existence of a contract cannot constitute a hindrance to the occurrence of a contract condition under the doctrine of prevention because the duty not to hinder is a contractual duty. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 132 Conn. App. 95–96; see also id., 96 ("we conclude as a matter of law that a party seeking to invoke the doctrine of prevention, a principle of contract law, may not do so [on the basis of] conduct that occurred before the existence of the contract"). After rejecting the plaintiff's other claims on appeal;[11] see id., 97, 101–102; the Appellate Court affirmed the judgment of the trial court. Id., 102. The Appellate Court did not address, however, the plaintiff's contention that the court improvidently raised, and therefore should not consider, the prevention issue that the court identified in its order for supplemental briefing.

This certified appeal followed. The plaintiff claims that (1) the Appellate Court improperly raised the prevention issue sua sponte in its order for supplemental briefing, and (2) even if the Appellate Court properly raised the issue, it incorrectly concluded that the plain-

tiff could not prevail on its claim under the prevention doctrine. The defendants contend that they preserved, in the trial court, the issue that the Appellate Court raised in its order for supplemental briefing, and, even if it did not, the Appellate Court acted within its discretion to raise the issue sua sponte and properly decided it.[12] We reject the defendants' claim that they preserved the issue in the trial court but conclude that the Appellate Court properly raised the issue sua sponte because it was justified in doing so on the basis of exceptional circumstances and, further, that the plaintiff suffered no cognizable prejudice thereby. We also conclude that the Appellate Court properly decided the issue.

I

PRESERVATION CLAIM

We first address the plaintiff's claim that the Appellate Court improperly ordered, sua sponte, supplemental briefing on an issue that the defendants had neither raised before the trial court nor raised as an alternative ground for affirmance on appeal. The defendants contend, to the contrary, that the Appellate Court properly ordered supplemental briefing on the issue because they had raised the issue in the trial court, and, even if the issue was not expressly preserved, it was closely intertwined with the issue that the plaintiff raised on appeal. In addition, the defendants claim that, even if the issue that the Appellate Court raised was entirely distinct, the Appellate Court had the authority to raise and decide the issue as long as it requested supplemental briefing thereon. We conclude that the issue was not preserved in the trial court but that the Appellate Court properly raised it sua sponte.

A

Preservation of Issue on Which Appellate
Court Ordered Supplemental Briefing

We begin with the question of whether the issue on which the Appellate Court ordered supplemental briefing was raised, and thereby preserved, in the trial court, as ordinarily is required for review of a claim on appeal. See, e.g., *Murphy* v. *EAPWJP, LLC*, 306 Conn. 391, 399, 50 A.3d 316 (2012) ("[i]t is well established that a claim must be distinctly raised at trial to be preserved for appeal"); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial"). The defendants note that the Appellate Court observed in its decision that "Brown & Brown . . . argued [in the motion for summary judgment] that its alleged failure to forward the . . . renewal notice occurred many months before the parties entered into the contract, and, therefore, such action could not provide the basis for a breach of the agreement as alleged in the complaint." *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 132 Conn. App. 92. The defendants

contend that, because this was the very issue on which the Appellate Court sought supplemental briefing, that issue was preserved. Thus, the defendants essentially claim, as they did in their opposition to the plaintiff's motion for permission to file a reply to the defendants' supplemental brief in the Appellate Court, that there was no material distinction between the plaintiff's claim that the defendants breached the further assurances provision of the contract, which is the claim that the defendants addressed in their motion for summary judgment, and the plaintiff's claim that the defendants hindered the plaintiff in its efforts to comply with the contractual license requirement for purposes of the prevention doctrine, which is the claim that the plaintiff raised in its opposition to the motion for summary judgment. In other words, in the defendants' view, the further assurances provision is merely an express statement of the principles of good faith and fair dealing that underlie the prevention doctrine—principles that are implied in every contract—and that the alleged breach of that provision *constituted* hindering conduct under the prevention doctrine.

The plaintiff contends, to the contrary, that its claim that the defendants were equitably barred by the prevention doctrine from terminating the contract on the basis of the plaintiff's failure to renew its license was entirely distinct from its claim that the defendants breached the further assurances provision, which claim the plaintiff did not press in its opposition to the defendants' motion for summary judgment. The plaintiff further contends that the defendants, in their reply to the plaintiff's opposition to the motion for summary judgment, raised no claim that the plaintiff's claim under the prevention doctrine failed as a matter of law because of the timing of the defendants' alleged conduct, and the trial court rejected the plaintiff's claim under the prevention doctrine solely on the ground that the status of the plaintiff's license renewal was a matter of public record. Accordingly, the plaintiff contends, the claim that the prevention doctrine does not apply because of the timing of the defendants' alleged conduct never was raised or decided in the trial court.

We agree with the plaintiff. Although the specific issue on which the Appellate Court ordered supplemental briefing, namely, "whether the plaintiff's claim of breach of contract based on Brown & Brown's alleged failure to forward the renewal notice failed as a matter of law because the alleged conduct occurred prior to the date [on] which the parties entered into the [contract]"; *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 132 Conn. App. 94; was raised by the defendants in the trial court, the defendants raised it in response to the plaintiff's claim under the further assurances provision of the contract. The defendants did not raise the claim in support of their contention that the plaintiff's claim under the pre-

vention doctrine failed as a matter of law, which was the only ruling by the trial court that the plaintiff challenged on appeal. Rather, in the defendants' reply to the plaintiff's opposition to the motion for summary judgment, in which the plaintiff first raised its claim under the prevention doctrine, the defendants contended only that the prevention doctrine was inapplicable because they had not brought a breach of contract claim against the plaintiff, in response to which the plaintiff could have asserted the defense of prevention. Furthermore, the trial court did not suggest in its memorandum of decision that its reasons for concluding that there was no genuine issue of material fact as to whether the defendants breached the further assurances provision applied equally to the plaintiff's prevention claim. Accordingly, we conclude that the issue on which the Appellate Court sought supplemental briefing was neither distinctly raised by the defendants nor directly decided by the trial court.

## B

### Authority of Appellate Court to Raise Unpreserved Issue Sua Sponte

Having concluded that the issue on which the Appellate Court ordered supplemental briefing was not raised in the trial court, we turn to the plaintiff's claim that the Appellate Court improperly raised it sua sponte. In support of its claim, the plaintiff asserts, first, that a reviewing court generally should not engage in "sua sponte issue generation" because it is "inconsistent with our adversarial system of justice," in which the parties decide which issues to litigate and the court decides those issues. Acknowledging that we have recognized some limited exceptions to this general rule,[13] the plaintiff contends that those exceptions are not applicable to the present case. The plaintiff also contends that, to the extent that this court has indicated that it is appropriate for a reviewing court to raise an issue sua sponte whenever it wishes, as long as the court affords the parties an opportunity to brief the issue, we should disavow any such suggestion. The plaintiff finally maintains that a reviewing court should not raise an issue sua sponte when doing so would result in undue prejudice to a party, and, further, in the present case, it was improper for the Appellate Court to raise the issue that it did because the plaintiff was unfairly prejudiced by the court's action.

"It is well settled that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial." (Internal quotation marks omitted.) *State* v. *Hampton*, 293 Conn. 435, 442, 978 A.2d 1089 (2009); see Practice Book § 60-5. "[O]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." (Internal quotation marks omitted.) *Perez-*

*Dickson* v. *Bridgeport*, 304 Conn. 483, 498–99, 43 A.3d 69 (2012); accord *New Haven* v. *Bonner*, 272 Conn. 489, 498, 863 A.2d 680 (2005). "The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *State* v. *Dalzell*, 282 Conn. 709, 720, 924 A.2d 809 (2007). As this court previously has observed, this rule, as a general matter, applies equally to alternative grounds for affirmance. See id., 717, 720; see also *Thomas* v. *West Haven*, 249 Conn. 385, 390 n.11, 734 A.2d 535 (1999) ("[t]he appellee's right to file a [preliminary statement of the issues pursuant to Practice Book] § 63-4 [a] [1] . . . has not eliminated the duty to have raised the issue in the trial court" [internal quotation marks omitted]), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000).

We also have recognized, however, that, although a reviewing court is not *bound* to consider claims that were not raised at trial, it has the authority to do so in its discretion, an authority that is limited neither by statute nor by procedural rules. See, e.g., *Persico* v. *Maher*, 191 Conn. 384, 403, 465 A.2d 308 (1983) ("[w]hile we are not bound to consider [unpreserved] claims of error, and do not ordinarily do so, we have [on] occasion considered a question which was not so raised, not by reason of the appellant's right to have it determined but because in our opinion in the interest of public welfare or of justice between individuals it ought to be done" [internal quotation marks omitted]). This includes the authority to raise unpreserved issues sua sponte. See, e.g., *Reardon* v. *Windswept Farm, LLC*, 280 Conn. 153, 165, 905 A.2d 1156 (2006) ("[t]his court . . . has the discretion to act, sua sponte, on grounds not directly raised by the parties"); *State* v. *Ramos*, 261 Conn. 156, 172 n.16, 801 A.2d 788 (2002) ("[i]n certain instances, dictated by the interests of justice, we may, sua sponte, exercise our inherent supervisory power to review an unpreserved claim that has not been [properly] raised [on appeal]"); *Burton* v. *Browd*, 258 Conn. 566, 569, 783 A.2d 457 (2001) ("[t]he Appellate Court has judicial discretion to act, sua sponte, on grounds not directly raised by the parties"). Our cases have not always been clear, however, as to what circumstances will justify review of unpreserved claims raised on appeal or the scope of the reviewing court's discretion to raise unpreserved issues sua sponte. This case provides us with an opportunity to clarify these issues.

1

Circumstances Under Which Reviewing Court
May Consider Unpreserved Claims
Raised by a Party

In furtherance of that endeavor, we undertake a brief

review of the historical factors and jurisprudential principles that underlie the treatment of unpreserved claims by appellate courts. One commentator has argued that the confusion about the authority of appellate courts to raise and decide issues sua sponte arose from the unresolved "tension between law and equity . . . ." B. Miller, "Sua Sponte Appellate Rulings: When Courts Deprive Litigants of an Opportunity to Be Heard," 39 San Diego L. Rev. 1253, 1262 (2002). Historically, the English courts were divided between courts of law and courts of equity. See id., 1263. An appeal from the decision of a court of law was taken by way of a writ of error, which assigned specific issues on which the trial court had made an error. Id. Issues not expressly assigned were waived. Id.; see also R. Martineau, "Considering New Issues on Appeal: The General Rule and the Gorilla Rule," 40 Vand. L. Rev. 1023, 1026–27 (1987) ("[t]he purpose [of the writ of error] was not to test whether the proper party had won, but only whether the judge had made an error"). "Unlike the law courts, equity developed flexible procedures to address the needs of individual cases. One of those procedures was the device of rehearing, which allowed the court to address new facts or law not originally raised by the parties." B. Miller, supra, 1263; see also R. Martineau, supra, 1027 (in courts of equity, "[t]he appellate court could review the entire case, both law and facts, and render any type of judgment it thought justice demanded, without regard to whether the issue [on] which the appellate court based its judgment had been presented to the lower court"). In the United States, most jurisdictions, including Connecticut and the federal courts, have merged law and equity courts, and one set of appellate courts administers both systems. See B. Miller, supra, 1264. Although most "appellate procedures are overtly based on the principles of writ of error review at common law, rather than the appeal in equity . . . the historic tensions underlying law and equity persist . . . and still compete in the workings of appellate courts."[14] (Footnotes omitted.) Id. "Because judges [continue to] see their role as doing justice in the tradition of equity (or at least avoiding miscarriages of justice), courts frequently refuse to apply the waiver rule[15] and instead raise issues sua sponte" to avoid an unjust result. (Footnote added.) Id., 1271; see also *Hormel* v. *Helvering*, 312 U.S. 552, 557, 61 S. Ct. 719, 85 L. Ed. 1037 (1941) ("Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice."); *Persico* v. *Maher*, supra, 191 Conn. 403 (this court will address unpreserved claims when "in [its] opinion in the interest of public welfare

or of justice between individuals it ought to be done" [internal quotation marks omitted]).

Another commentator has argued that the inconsistent treatment of unpreserved claims by appellate courts reflects the tension between the adversarial system and the inquisitorial system. A. Frost, "The Limits of Advocacy," 59 Duke L.J. 447, 458–59 (2009). The American legal system historically has been "considered more adversarial than most, and its basic principle is that the parties, not the judge, have the major responsibility for and control over the definition of the dispute." (Internal quotation marks omitted.) Id., 458; see id., 455 (under adversarial system, "the parties to litigation, and not the judge, are responsible for raising the legal questions that will ultimately be resolved by the court"); see also *Greenlaw* v. *United States*, 554 U.S. 237, 243, 128 S. Ct. 2559, 171 L. Ed. 2d 399 (2008) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."); *United States* v. *Burke*, 504 U.S. 229, 246, 112 S. Ct. 1867, 119 L. Ed. 2d 34 (1992) (Scalia, J., concurring in the judgment) ("[t]he rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one"). In contrast, in the inquisitorial system that is prevalent in European courts, "judges take the lead in the investigation and presentation of the case." A. Frost, supra, 449. The justifications for the adversarial system are "that self-interested adversaries will uncover and present more useful information and arguments to the decision maker than would be developed by the judicial officer in an inquisitorial system"; A. Milani & M. Smith, "Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts," 69 Tenn. L. Rev. 245, 282 (2002); "the system preserves individual autonomy and dignity by allowing a person the freedom to make his case to the court"; id.; and "a party who is intimately involved in the adjudicatory process and feels that he has been given a fair opportunity to present his case . . . is likely to accept the results whether favorable or not." (Internal quotation marks omitted.) Id., 283–84; see also A. Frost, supra, 459 ("[t]he litigants' control of case presentation is thought to promote dignitary and participation values by affirm[ing] human individuality and showing respect for the opinions of each party, producing an outcome more satisfying to winners and losers alike" [internal quotation marks omitted]). In addition, requiring parties to frame the issues "promotes judicial economy, efficient resolution of disputes, and finality." A. Frost, supra, 461. Finally, it has been argued that the adversarial system promotes judicial neutrality and the

"integrity of the adjudicative process itself . . . ." (Internal quotation marks omitted.) A. Milani & M. Smith, supra, 247.[16]

Regardless of whether the practice of appellate courts in raising issues sua sponte that have not been raised in the trial court is analyzed under the law versus equity model or the adversarial versus inquisitorial system model, there is widespread agreement that appellate courts have the authority to engage in this practice. See *United States National Bank of Oregon* v. *Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 446, 113 S. Ct. 2173, 124 L. Ed. 2d 402 (1993) ("when [a case] is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law" [internal quotation marks omitted]);[17] id., 447 ("a court may consider an issue antecedent to . . . and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief" [internal quotation marks omitted]); *Singleton* v. *Wulff*, 428 U.S. 106, 121, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. [There is] no general rule. Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below . . . ." [Citation omitted.]); *Reardon* v. *Windswept Farm, LLC*, supra, 280 Conn. 165 ("[t]his court has the discretion to act, sua sponte, on grounds not directly raised by the parties"); see also *Davis* v. *United States*, 512 U.S. 452, 464, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994) (Scalia, J., concurring) ("the refusal to consider arguments not raised is a sound prudential practice, rather than a statutory or constitutional mandate, and there are times when prudence dictates the contrary").

Under our case law, however, the circumstances that justify sua sponte review of an unpreserved issue are far from clear. In an attempt to shed some light on this question, we first review the circumstances that justify review of an unpreserved claim that a party has raised. Our cases have recognized a number of circumstances in which the reviewing court not only can but is obligated to exercise its power to review an unpreserved claim if certain conditions are met. First, this court repeatedly has held that claims implicating subject matter jurisdiction may be raised by the parties or by the court at any time; see, e.g., *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 533, 911 A.2d 712 (2006); and must be resolved once they are raised. See, e.g., *State* v. *Richardson*, 291 Conn. 426, 429, 969 A.2d 166 (2009) ("once raised, either by a party or by the court itself, the question [of subject matter jurisdiction] must be answered before the court may decide the case"

[internal quotation marks omitted]). Second, a reviewing court "may in the interests of justice notice plain error not brought to the attention of the trial court." Practice Book § 60-5; see also *State* v. *Sanchez*, 308 Conn. 64, 77, 60 A.3d 271 (2013) ("the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings" [internal quotation marks omitted]). Indeed, "our jurisprudence *mandates* [review of an unpreserved claim and] reversal when the reviewing court determines that manifest injustice has resulted from a trial court's unpreserved error." (Emphasis in original.) *State* v. *Sanchez*, supra, 79. Finally, this court will review unpreserved constitutional claims when the conditions set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), have been met.[18]

This court also has, on occasion, addressed unpreserved, nonjurisdictional claims under its supervisory power without invoking the plain error doctrine or *Golding*.[19] See, e.g., *Perez-Dickson* v. *Bridgeport*, supra, 304 Conn. 500 (court may review unpreserved claim when "consideration of the question is in the interest of public welfare or of justice between the parties" [internal quotation marks omitted]). In addition, this court and the Appellate Court occasionally have invoked the plain error doctrine to review an unpreserved claim without expressly finding that "the error [was] so obvious that it affect[ed] the fairness and integrity of and public confidence in the judicial proceedings."[20] (Internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 287–88, 963 A.2d 11 (2009). We acknowledge that this practice appears to be inconsistent with the principle that the plain error rule "is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal . . . for reasons of policy." *State* v. *Cobb*, 251 Conn. 285, 343 n.34, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000). Thus, "[a]n appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable." (Internal quotation marks omitted.) *State* v. *Sanchez*, supra, 308 Conn. 77. In addition, "[a] party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice."[21] (Internal quotation marks omitted.) Id. As we have indicated, however, in *addition* to the authority to review unpreserved claims under the plain error doctrine and *Golding*, a reviewing court has the authority to review such claims under its supervi-

sory power.[22] Accordingly, to the extent that this court and the Appellate Court may have invoked the plain error doctrine improperly in cases in which there was no patently obvious trial court error resulting in manifest injustice, it does not necessarily follow that review of the unpreserved claims under the court's supervisory power would have been inappropriate in those cases.

Although our cases have not clearly identified the specific circumstances that will justify the exercise of our supervisory power to review unpreserved claims in the absence of plain error or constitutional error, we glean the following general principles from them. First, the minimal requirements for review of an unpreserved claim are that the record must be adequate for review, such that there is no need for additional trial court proceedings or factual findings,[23] and all parties must have had an opportunity to be heard on the issue.[24] See, e.g., *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 568–69, 916 A.2d 5 (2007). In addition, review of an unpreserved claim generally is inappropriate if it results in unfair prejudice to any party.[25] Prejudice may be found, for example, when a party demonstrates that it would have presented additional evidence or that it otherwise would have proceeded differently if the claim had been raised at trial. See *Perez-Dickson* v. *Bridgeport*, supra, 304 Conn. 501–505; see also *Singleton* v. *Wulff*, supra, 428 U.S. 120 (rule that claim must be raised in trial court is "essential [so] that parties may have the opportunity to offer all [of] the evidence they believe [is] relevant to the issues . . . [and so] that litigants [will] not be surprised on appeal by [a] final decision . . . of issues [on] which they have had no opportunity to introduce evidence" [internal quotation marks omitted]). Moreover, because it may be difficult for a party to prove definitively that it would have proceeded in a different manner and, as a result, would suffer unfair prejudice if the reviewing court were to consider the unpreserved issue, once that party makes a colorable claim of such prejudice, the burden shifts to the other party to establish that the first party will not be prejudiced by the reviewing court's consideration of the issue. See *Perez-Dixon* v. *Bridgeport*, supra, 501 n.25 (when reviewing court raises issue sua sponte, burden falls on party favoring reviewing court's consideration of that issue to disprove prejudice to party objecting to such consideration).

We emphasize that, although these conditions are *necessary* for the review of unpreserved claims, they are not alone *sufficient*.[26] Review of an unpreserved claim may be appropriate, however, when the minimal requirements for review are met *and* (1) the party that did not raise the claim does not object to review;[27] see, e.g., *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 868 n.10, 675 A.2d 441 (1996) (reviewing unpreserved claim "[b]ecause [the defendant] has not argued that [the court] should refrain from considering

[it]"); or (2) the party who raised the unpreserved claim cannot prevail.[28] See, e.g., *State* v. *Gaines*, 257 Conn. 695, 713 n.13, 778 A.2d 919 (2001) (reviewing claim without determining whether it was preserved because defendant could not prevail on claim). We conclude that, if either of these additional conditions are met, the reviewing court has broad discretion to review the claim or, alternatively, to decline to do so if, for example, the claim was clearly unpreserved and there are no specific reasons militating in favor of review, the unpreserved claim would require an extremely complex, time-consuming analysis, or the issue was not well briefed.

As we have indicated, there also are circumstances that militate in favor of reviewing unpreserved claims even over the objection of a party. This court has reviewed unpreserved claims pursuant to its supervisory power when the claim was of a *public character*; *Donovan* v. *Davis*, 85 Conn. 394, 399, 82 A. 1025 (1912) (although claim that trial court improperly had ordered ballot boxes opened for recount after election for public office was unpreserved, "the public character of the case and the practical importance of the [unpreserved] question involved lead [the court] to briefly discuss it [on] the merits"); when there was an intervening change in the law; see *Reardon* v. *Windswept Farm, LLC*, supra, 280 Conn. 165 (when there was intervening change in law, "the interest in the uniform application of the plainly governing law warrants . . . consideration of a claim beyond the narrow issue that was before the trial court"); when there was a newly established, undisputed fact on which both parties relied; see *Vine* v. *Zoning Board of Appeals*, supra, 281 Conn. 568–70 (reviewing unpreserved, alternative ground for affirmance when undisputed, dispositive fact on which both parties relied was established after trial court rendered judgment); when review of the claim would obviate the need to address a constitutional question; see *State* v. *Ray*, 290 Conn. 602, 608 n.7, 966 A.2d 148 (2009) (reviewing defendant's unpreserved, statutory interpretation claim that was intertwined with defendant's constitutional claim when resolution of claim could have obviated need to review constitutional claim);[29] when the trial court's evidentiary ruling was correct but for the wrong reason; *State* v. *Colon*, 272 Conn. 106, 187–88, 864 A.2d 666 (2004) (court assumed that trial court was incorrect in ruling that certain testimony was admissible on ground that defense counsel had opened door to its admission and held that it was not error to admit testimony because it could have been admitted to establish intent of defendant when he killed victim), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); and when the claim involves judicial bias. *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982) (reviewing claim of judicial bias under plain error doctrine because judicial bias "strikes at the very core

of judicial integrity and tends to undermine public confidence in the established judiciary" [internal quotation marks omitted]).[30] This list is not intended to be exhaustive, and, indeed, it would be impossible to catalogue all of the circumstances under which review of an unpreserved claim might be appropriate. It is clear, however, that these are exceptional cases, in which the interests of justice, fairness, integrity of the courts and consistency of the law significantly outweigh the interest in enforcing procedural rules governing the preservation of claims.[31] Accordingly, we emphasize that a general statement by a reviewing court that the review of an unpreserved claim is warranted in the interests of justice between the parties or because no party will be prejudiced is not alone sufficient.[32] Rather, unless all parties agree to review of the unpreserved claim or the party raising the claim cannot prevail, the reviewing court should provide specific reasons, based on the exceptional circumstances of the case, to justify a deviation from the general rule that unpreserved claims will not be reviewed.

2

Circumstances Under Which Reviewing Court May Raise Unpreserved Issue Sua Sponte

Having discussed the circumstances under which review of an unpreserved claim raised by a party is appropriate, we next consider the circumstances under which a reviewing court is justified in raising an unpreserved issue sua sponte. As we have indicated, the reviewing court not only can but must address an issue implicating subject matter jurisdiction whenever it arises, regardless of how the issue comes to the court's attention. With respect to unpreserved issues involving plain error or constitutional error, our focus has been on the need to afford parties the opportunity to address the issue rather than on respect for the autonomy of the litigants because it is implicit in our jurisprudence governing plain error and *Golding* review that, in cases involving manifest injustice and constitutional error, respectively, considerations of fairness and justice outweigh the considerations underlying the general policy of deference to the adversarial process. Accordingly, we can perceive no reason why a reviewing court should be precluded from raising issues involving plain error or constitutional error sua sponte, as long as the court provides an opportunity for the parties to be heard by way of supplemental briefing and the other threshold conditions for review are satisfied.[33]

Similarly, we conclude that, with respect to unpreserved issues that do not involve subject matter jurisdiction, plain error or constitutional error, if the reviewing court would have the discretion to review the issue if raised by a party because important considerations of justice outweigh the interest in enforcing procedural rules governing the preservation of claims and adversar-

ial principles, the court may raise the claim sua sponte, as long as it provides an opportunity for all parties to be heard on the issue.[34] In other words, if an exceptional circumstance exists that would justify review of an unpreserved claim if raised by a party, the reviewing court may raise the issue sua sponte.[35] Of course, as we have explained in connection with a reviewing court's consideration of a claim raised for the first time on appeal, if a party objecting to the reviewing court's sua sponte consideration of the claim can demonstrate that it would be unfairly prejudiced by such consideration, it would be inappropriate for the appellate tribunal to consider such a claim. Furthermore, once the objecting party makes a colorable showing of unfair prejudice, the burden shifts to the other party to establish that the objecting party will suffer no such prejudice. Although we again underscore that all of the circumstances in which a reviewing court may raise an issue sua sponte cannot be catalogued, we also reiterate that our system is an adversarial one in which the burden ordinarily is on the parties to frame the issues, and the presumption is that issues not raised by the parties are deemed waived.

### 3

### Reviewing Court's Treatment of Unpreserved, Alternative Grounds for Affirmance

We next consider how the foregoing principles apply more specifically to alternative grounds for affirmance.[36] Treatment of such claims depends on three variables: (1) whether the claim was raised in the trial court; (2) whether the claim was raised on appeal; and (3) whether the appellant would be entitled to a directed judgment if it prevailed on the claim that it raised on appeal, or whether, instead, there would be further proceedings in the trial court. We first address cases in which the appellant, upon prevailing, would be entitled to a directed judgment, so that there would be no further trial court proceedings. We conclude that, in such cases, the reviewing court may review an unpreserved, alternative ground for affirmance, or raise the issue sua sponte, only if the claim merits review under the plain error doctrine or *Golding*, or under exceptional circumstances such as those previously described in this opinion. In such circumstances, it may be argued that, as a general matter, the appellee should not be in a better position because of the trial court's reversible error on the issue raised by the appellant on appeal than it would have been if the trial court correctly had rendered judgment for the appellant in the first place.[37] Moreover, the interests of judicial economy ordinarily militate against permitting sua sponte appellate review of an unpreserved claim by the appellee that would result in a new trial or some other further proceeding in the trial court. Those interests are best served, rather, by a general rule that would result in an end to the litigation by

virtue of a directed judgment in favor of the appellant.

We also address the situation in which the resolution of the appellant's claim would result in a directed judgment in the appellant's favor, the alternative ground for affirmance was raised in the trial court, but the appellee failed to raise the claim on appeal. We conclude that, when the trial court actually ruled on the alternative ground in the appellee's favor, the reviewing court properly may raise the issue sua sponte. Under such circumstances, the fact that the appellant failed to appeal from the ruling on the alternative ground means that that ruling would stand even if the appellant prevailed on the claim that it raised, and, therefore, the reviewing court could not grant effective relief. Thus, the reviewing court would lack appellate jurisdiction. See *State* v. *T.D.*, 286 Conn. 353, 361, 944 A.2d 288 (2008) (issue on appeal is moot when appellate court cannot grant relief, and mootness implicates appellate court's subject matter jurisdiction). If the trial court did not rule in the appellee's favor on the preserved alternative ground, however, the reviewing court should not raise it sua sponte in the absence of exceptional circumstances.

With respect to cases in which the reviewing court would be required to order further proceedings in the trial court upon deciding the case in the appellant's favor, we conclude that the court may consider an unpreserved, alternative ground for affirmance that was raised on appeal for reasons of judicial economy, because the appellee likely would raise the claim on remand.[38] If the unpreserved issue was not raised on appeal, the reviewing court should raise the issue sua sponte only if it seems likely that the issue would arise on remand, even though the appellee has not raised it on appeal, or if exceptional circumstances exist. If the issue was preserved in the trial court but was not raised on appeal, then, for the reasons that we have explained, the reviewing court may raise it sua sponte if the trial court ruled on the issue in the appellee's favor.

4

Application of Principles Governing Treatment
of Unpreserved Claims to the Present Case

With these principles in mind, we address the plaintiff's claim in the present case that the Appellate Court improperly raised, sua sponte, the issue of whether the plaintiff's breach of contract claim failed as a matter of law because the defendants' alleged conduct occurred before the parties entered into the contract.

As a preliminary matter, we address the standard of review. The plaintiff contends that, because the Appellate Court raised the issue sua sponte, its decision to review the issue should be reviewed de novo.[39] The defendants contend, to the contrary, that, because the review of unpreserved claims is within the reviewing court's discretion, this court should review the Appel-

late Court's decision for abuse of discretion. In support of this claim, the defendants rely on this court's decision in *State* v. *Myers*, supra, 290 Conn. 286, which in turn relied on *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 520 A.2d 208 (1987), overruled in part on other grounds by *Curry* v. *Burns*, 225 Conn. 782, 626 A.2d 719 (1993), in which the court stated that "the scope of [this court's] review is limited to [a determination of] whether the Appellate Court abused its discretion in granting review under the plain error doctrine." *Finley* v. *Aetna Life & Casualty Co.*, supra, 196. We note that, since the parties in the present case filed their briefs, this court has overruled *Finley* in determining that the Appellate Court's decision to reverse a judgment under the plain error doctrine is subject to plenary review. *State* v. *Sanchez*, supra, 308 Conn. 80. Nevertheless, we agree with the defendants that the Appellate Court's decision to raise an unpreserved issue sua sponte in exceptional circumstances is subject to review for abuse of discretion.

In *Sanchez*, this court explained that "the plain error doctrine is not . . . a rule of reviewability. It is a rule of reversibility. . . . Indeed . . . our jurisprudence *mandates* reversal when the reviewing court determines that manifest injustice has resulted from a trial court's unpreserved error." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 79; see also *State* v. *Myers*, supra, 290 Conn. 288–89 ("an appellate court addressing an appellant's plain error claim *must* engage in a review of the trial court's actions and, upon finding a patent error, determine whether the grievousness of that error qualifies for the invocation of the plain error doctrine and the automatic reversal that accompanies it" [emphasis in original]). Thus, if a patent error has resulted in manifest injustice, the reviewing court has no choice but to reverse the trial court's judgment. Conversely, if there was no patent error or manifest injustice, the court has no discretion to review the claim under the plain error doctrine. See *State* v. *Myers*, supra, 289–90; see also *State* v. *Pierce*, 269 Conn. 442, 452–53, 849 A.2d 375 (2004) (although trial court's failure to comply with rules of practice was improper, Appellate Court improperly vacated defendant's sentence under plain error doctrine because error did not result in manifest injustice). Moreover, because the trial court's error must be patent and the injustice must be manifest, there is little gray area allowing for the exercise of judgment with respect to the determination of whether these standards are satisfied; either they are satisfied or they are not. Accordingly, we concluded in *Sanchez* that, contrary to this court's statement in *Finley*, the plain error doctrine confers no discretion on the Appellate Court, and that court's decision to review a claim under the doctrine is subject to plenary review. See *State* v. *Sanchez*, supra, 308 Conn. 79–80.

In contrast, this court repeatedly has stated that,

when it acts in the exercise of its supervisory power, it "has the discretion to act, sua sponte, on grounds not directly raised by the parties." *Reardon* v. *Windswept Farm, LLC*, supra, 280 Conn. 165; see also *Burton* v. *Browd*, supra, 258 Conn. 569 ("[t]he Appellate Court has judicial discretion to act, sua sponte, on grounds not directly raised by the parties"); *State* v. *Gilnite*, 202 Conn. 369, 373, 521 A.2d 547 (1987) ("the Appellate Court has . . . discretion in addressing claims not raised by the parties"). Although, as we have explained in this opinion, this discretion is not unlimited, and an unpreserved claim is reviewable only under exceptional circumstances, a particular claim may fall into a gray area in which reasonable jurists could disagree as to whether review is justified. If a claim falls into that gray area, we will not reverse the Appellate Court's decision to raise it sua sponte simply because we might have reached a different conclusion.

Under the circumstances presented, we cannot conclude that the Appellate Court abused its discretion in raising, sua sponte, the issue of whether the plaintiff's breach of contract claim failed as a matter of law because the alleged failure to forward the renewal notice to the plaintiff occurred before the parties entered into the contract. The plaintiff notes that the only claim that the defendants raised in their motion for summary judgment was that the plaintiff's claim that the defendants had breached the further assurances provisions of the contract failed as a matter of law because the alleged conduct occurred before the contract existed. The plaintiff further notes that it abandoned that theory in its opposition to the defendants' motion for summary judgment and argued only that the defendants were barred from terminating the contract under the prevention doctrine. Although, as previously discussed, we have regarded the two claims as separate and distinct for preservation purposes because the parties and the trial court treated them as separate and distinct, in light of the marked and obvious similarity between those theories, the Appellate Court reasonably could have concluded that the plaintiff's argument with respect to the prevention doctrine did not constitute an *abandonment* of its claim that the defendants had breached the further assurances provision but, rather, constituted an *elaboration* of that claim.[40] Indeed, as we explain in part II of this opinion, the plaintiff's claim that performance of the condition that the plaintiff maintain its insurance license was *excused* because the defendants prevented performance was essentially equivalent to the claim that the defendants *breached* the covenant of good faith and fair dealing by failing to forward the renewal notice to the plaintiff. In turn, the further assurances provision essentially incorporated certain aspects of the covenant of good faith and fair dealing.

Thus, the Appellate Court reasonably could have con-

cluded that, even if the plaintiff could prevail on the claim that it raised on appeal to the Appellate Court—that is, that the trial court improperly had rejected the plaintiff's claim under the prevention doctrine on the ground that the defendants were not the sole cause of the suspension of the plaintiff's insurance license—the trial court's conclusion that the plaintiff's claim under the further assurances provision failed as a matter of law because the defendants' conduct had predated the formation of the contract applied fully to the plaintiff's claim under the prevention doctrine. Accordingly, the Appellate Court reasonably could have been concerned that the plaintiff's claim on appeal was effectively moot, which would implicate the court's subject matter jurisdiction.[41] See, e.g., *State* v. *T.D.*, supra, 286 Conn. 361 (issue on appeal is moot when appellate court cannot grant relief). Moreover, even if the Appellate Court understood that the parties and the trial court had viewed the two issues as distinct, because of the obvious similarity between those issues, the Appellate Court reasonably could have expected that, if the plaintiff prevailed on its claim on appeal, the defendants, upon remand of the case to the trial court, would raise the claim that the prevention doctrine did not apply because the defendants' conduct occurred before the existence of the contract.[42] As we have indicated, interests of judicial economy justify appellate review of an unpreserved, alternative ground for affirmance that likely would arise when, as in the present case, a decision in favor of the appellant would result in a remand for a new trial. Finally, the Appellate Court's failure to raise the issue sua sponte could have led to inconsistency or confusion in the case law.[43] See footnote 35 of this opinion. All of these considerations support the decision of the Appellate Court to raise the issue that it did sua sponte.

The plaintiff claims, however, that it was prejudiced by the Appellate Court's consideration of the issue that it raised sua sponte because, if it had been on notice of this claim in the trial court, it would have raised other arguments in support of its claim that it was entitled to damages from the defendants.[44] Specifically, the plaintiff contends that, if it had had notice, during the proceedings before the trial court, of the claim that the Appellate Court raised sua sponte, it (1) would have presented evidence about the contractual relationship between the defendants and the plaintiff's corporate affiliate, Blumberg Associates, Inc., which would have aided the plaintiff in demonstrating that the hindering conduct "occurred in the context of [contractual] relationships," and (2) it would have "considered admitting [Brown & Brown's] . . . special [defense]" that the contract between the parties was void ab initio because the plaintiff did not have its insurance license when the parties executed the contract, thereby allowing the plaintiff to bring an unjust enrichment claim. In addi-

tion, in its supplemental brief to the Appellate Court, the plaintiff contended that, even if its claim under the prevention doctrine failed, it "still [was] entitled to relief because it *fully* performed its obligations under the [contract] and because allowing the defendants to reap the benefits of that performance without any further payment to [the plaintiff] would be manifestly unjust, especially absent any harm to the defendants from the lapse of the insurance license." (Emphasis in original.) *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, Conn. Appellate Court Records & Briefs, supra, Plaintiff's Supplemental Brief p. 7. In its brief to this court, the plaintiff again relies on the principle that "[e]quity abhors a forfeiture"; (internal quotation marks omitted) *Fellows* v. *Martin*, 217 Conn. 57, 65, 584 A.2d 458 (1991); and cites § 229 of the Restatement (Second) of Contracts, which provides that, "[t]o the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange."[45] 2 Restatement (Second), Contracts § 229, p. 185 (1981).

We are not persuaded by the plaintiff's arguments. First, the plaintiff has referred to no authority for the proposition that the defendants, by engaging in conduct that hindered the plaintiff's compliance with some *other* contract, could have breached the contract in the present case. Second, the plaintiff's representation that it would have "considered" admitting Brown & Brown's defense that the parties' contract was void ab initio— as distinguished from a representation that it *would have* admitted Brown & Brown's defense—is inadequate to establish prejudice.[46] Finally, if the plaintiff believed that it had other, valid contractual and equitable claims, even if its claim under the prevention doctrine failed, the time to raise those claims was in its opposition to the defendants' motion for summary judgment. As the plaintiff acknowledges, it raised the claim under the prevention doctrine for the first time in its opposition to the motion for summary judgment. If the defendants had recognized at that time that, as they now contend, there was no material distinction between the plaintiff's claim under the prevention doctrine and its breach of contract claim predicated on the further assurances provision, and had responded to the plaintiff's claim under the prevention doctrine by raising the claim that the Appellate Court raised sua sponte, the plaintiff would not have been *entitled* at that point in the proceedings to raise new theories in support of its claim for damages that it had not raised in its complaint, or to add new arguments to its opposition to the defendants' motion for summary judgment.[47] Rather, the plaintiff's only recourse would have been to attempt to persuade the court to grant it permission to raise claims that it had failed to make initially, in a timely manner,

in opposition to the motion for summary judgment. The mere possibility that the trial court might have granted the plaintiff such relief is too speculative a basis on which to rest a claim of unfair prejudice, especially because the plaintiff has identified no strategic reason for not having raised those claims earlier. Indeed, the fact that the trial court denied the plaintiff's belated request for permission to raise a claim of bad faith in opposition to the defendants' motion for summary judgment supports this conclusion. Accordingly, we conclude that the Appellate Court properly raised the unpreserved issue sua sponte.

## II

### PREVENTION DOCTRINE CLAIM

We next address the merits of the plaintiff's contention that the Appellate Court improperly determined that the doctrine of prevention cannot be invoked on the basis of alleged conduct that occurred before the formation of the contract. We are unpersuaded by the plaintiff's claim.[48]

As we have indicated, under the prevention doctrine, if a party to a contract "prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, or to the performance of a return promise, [that party] is not relieved of the obligation to perform, and may not legally terminate the contract for nonperformance." (Footnote omitted.) 13 R. Lord, Williston on Contracts (4th Ed. 2000) § 39:3, pp. 517–18; see also 2 Restatement (Second), supra, § 245, p. 258 ("[w]here a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused"). As these and other authorities have recognized, the rule that a party may not prevent or hinder the occurrence of a contract condition is a specific application of the covenant of good faith and fair dealing that is implicit in every contract. See, e.g., 2 Restatement (Second), supra, § 245, comment (a), p. 258 ("[w]here a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing imposed on him under § 205 may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence"); 13 R. Lord, supra, § 39:6, p. 530 ("the principle of prevention is based on the implied agreement of the parties to a contract to proceed in good faith and [to] cooperate in performing the contract in accordance with its expressed intent" [footnote omitted]); see also *Consolidated Edison, Inc.* v. *Northeast Utilities*, 426 F.3d 524, 529 (2d Cir. 2005) ("the prevention doctrine, [when] it applies, creates nothing more than an *implied* contractual obligation, similar to—and perhaps rooted in—the implied covenant of good faith and fair dealing" [emphasis in original]); *In re Gulf Oil/*

*Cities Service Tender Offer Litigation*, 725 F. Supp. 712, 737 n.9 (S.D.N.Y. 1989) ("[t]he implied good faith rule and prevention doctrine are kindred precepts"); *Mitford* v. *de Lasala*, 666 P.2d 1000, 1006 (Alaska 1983) ("[t]he prevention doctrine is subsumed in [the] duty [of good faith and fair dealing]"); *M West, Inc.* v. *Oak Park Mall, L.L.C.*, 44 Kan. App. 2d 35, 54, 234 P.3d 833 (2010) ("[t]he prevention doctrine is substantially related to the implied covenant of good faith and fair dealing that is implicit in every contract"). This court has held that "no claim for breach of the duty of good faith and fair dealing will lie for conduct occurring prior to, or during, the formation of a contract." *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 638, 804 A.2d 180 (2002); see also id. ("The covenant of good faith and fair dealing *presupposes that the terms and purpose of the contract are agreed* [*on*] by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. . . . In accordance with these authorities, *the existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing.*" [Citation omitted; emphasis in original; internal quotation marks omitted.]). Because the prohibition on hindering conduct arises from the duty of good faith and fair dealing, we conclude that the same principle applies to claims under the prevention doctrine. See *Wachtel* v. *National Railroad Passenger Corp.*, Docket No. 11 Civ. 613 (PAC), 2012 U.S. Dist. LEXIS 11566, *6 (S.D.N.Y. January 30, 2012) (when no contract existed at time that allegedly hindering conduct occurred, prevention doctrine did not apply); *Sony Music Entertainment, Inc.* v. *Werre*, 2010 N.Y. Misc. LEXIS 576, *8 (N.Y. Sup. March 17, 2010) ("[A]t bottom, the application of [the prevention] doctrine rests on an implied obligation under the contract not to frustrate or prevent the performance of the condition precedent. . . . That general rule, however, applies when there is a binding contract in effect that contains the condition precedent . . . ." [Citation omitted; internal quotation marks omitted.]); 2 Restatement (Second), supra, § 245, comment (a), p. 258 (prevention doctrine "only applies . . . where the lack of cooperation constitutes a breach, either of a duty imposed by the terms of the agreement itself or of a duty imposed by a term supplied by the court"). Accordingly, we conclude that the Appellate Court correctly determined that the plaintiff's claim under the prevention doctrine failed as a matter of law because the allegedly hindering conduct by the defendants occurred before the contract existed.

In support of its claim to the contrary, the plaintiff contends that the prevention doctrine and the implied covenant of good faith and fair dealing "are not simply different labels for the same legal rule" but, rather, that the prevention doctrine is derived from the equitable rule that "one should not be able to take advantage of

his or her own wrongful act." 13 R. Lord, supra, § 39:6, p. 527. The plaintiff further argues that the doctrine is "analogous to the concept of waiver by estoppel in the context of excuses for nonperformance of contractual duties." (Internal quotation marks omitted.) "An individual who prevents the occurrence of a condition may be said to be 'estopped' from benefiting from the fact that the condition precedent to his or her obligation failed to occur." (Footnote omitted.) 13 R. Lord, supra, § 39:7, p. 533. Although we have no quarrel with the plaintiff's contentions regarding the derivation of the prevention doctrine and its similarity to other doctrines, we do not agree that those considerations demonstrate that the doctrine itself applies to conduct by a party to a contract that occurred before the contract existed. The prevention doctrine applies only to conduct that was wrongful *because it violated a duty created by contract*, not to *all* wrongful conduct. See, e.g., 2 Restatement (Second), supra, § 245, comment (a), p. 258. As the Appellate Court noted in the present case, "[w]hen a party engages in wrongful acts or omissions prior to entering into a contract or in negotiating a contract, the law provides an injured party with other means for recovering damages . . . . The plaintiff chose not to raise such claims in its complaint."[49] *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 132 Conn. App. 96.

We also do not agree with the plaintiff's contention that the decision of the court in *Dohanyos* v. *Prudential Ins. Co.*, 952 F.2d 947 (6th Cir. 1992), should lead us to conclude that the prevention doctrine applies to precontractual hindering conduct. The plaintiffs in *Dohanyos* were the beneficiaries of their son's life insurance policy. Id., 948. Delivery and acceptance of the policy were express conditions of the contract of insurance. Id. The defendant insurance company delivered the policy, which had an effective date of July 1, 1990, to its agent in late June, 1990, but the agent failed to deliver it to the insured before the effective date because the agent was on vacation and did not return until July 3, 1990. Id., 948–49. The insured was killed in an accident on July 2, 1990. Id., 949. When the plaintiffs brought an action against the insurance company seeking benefits under the policy, the insurance company contended that there was no contract of insurance because the policy had not been delivered to the insured or accepted by him. See id. The United States District Court concluded, inter alia, that the insurance company had waived the delivery requirement; id., 950; and that it was estopped from enforcing the acceptance requirement because it had prevented compliance with that condition. Id., 951. The United States Court of Appeals for the Sixth Circuit agreed, reasoning that, "[when] a contract is performable on the occurrence of a future event, there is an implied agreement that the promisor will place no obstacle in the way of the happening of such

event, particularly [when] it is dependent in whole or in part on his own act; and [when] he prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability." (Internal quotation marks omitted.) Id.

The plaintiff in the present case contends that *Dohanyos* supports the proposition that the prevention doctrine applies to conduct that occurred before the formation of a contract because the contract had not been formed in that case when the insurance company's agent failed to deliver the policy to the insured. It is unclear, however, whether the court in *Dohanyos* understood the conditions of delivery and acceptance to be conditions precedent to the *formation* of the contract or conditions to the *performance* of the contract.[50] Compare id., 950 (insurance company contended that no contract was *formed* because conditions were not satisfied), with id., 951 (applying case law governing application of prevention doctrine to conditions precedent to *performance*). If they were conditions precedent to performance, then the contract was in existence when the insurance company prevented the insured's compliance with the conditions. Even if they were conditions precedent to contract formation, however, we do not believe that *Dohanyos* should be extended to cases in which not even a *conditional* contract was in existence at the time of the allegedly hindering conduct.[51] Accordingly, even if we assume that *Dohanyos* applies to conditions precedent to contract formation and was correctly decided, we conclude that it does not dictate the result sought by the plaintiff in the present case.[52]

In summary, we conclude that, although the defendants did not preserve the claim that the plaintiff's claim under the prevention doctrine failed as a matter of law because the allegedly hindering conduct occurred before the contract existed, the Appellate Court properly raised that claim sua sponte. We further conclude that the Appellate Court properly determined that the plaintiff's claim under the prevention doctrine failed as a matter of law.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* This appeal originally was argued before a panel of this court consisting of Chief Justice Rogers and Justices Norcott, Palmer, Zarella, Eveleigh and McDonald. Thereafter, Justice Norcott recused himself and did not participate in the consideration or decision of the case.

[1] "Brown & Brown needed the plaintiff's insurance licensing files because some of the insurance accounts that the parent company had acquired from Blumberg [Associates, Inc.] were written on the plaintiff's insurance licenses and it could take up to one year to have the accounts transferred to the insurance license of Brown & Brown." *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 132 Conn. App. 90 n.5.

[2] "According to the evidence presented, the business address of the plaintiff at this time was 30 Forest Hills Drive in West Hartford. The plaintiff was unaware that its business address had been changed [in] the department's records until after Brown & Brown terminated the contract." *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra,

132 Conn. App. 91 n.6.

[3] "Sheila Sullivan, a representative of the department, stated that it was customary practice for the department to send a second notification, a notice of nonrenewal, to a licensee after the expiration of its insurance license. She could not say, however, whether a notice of nonrenewal had been sent to the plaintiff following the expiration of its license. She did state that if such a notification had been returned to the department, it would have been recorded in the department's log book. Sullivan stated that no such entry of return had been made in the present case." *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 132 Conn. App. 91 n.7.

[4] "Upon receipt of the letter, the plaintiff took the necessary steps to reinstate its license, and the license was reinstated on May 15, 2008." *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 132 Conn. App. 88 n.2.

[5] The "[f]urther [a]ssurances" clause of the contract provided that "[e]ach of the parties hereto shall cooperate with the others and execute and deliver to the other parties such other instruments and documents and take such other actions as may be reasonably requested from time to time by any other party hereto as necessary to carry out, evidence and confirm the intended purposes of [the contract]." (Internal quotation marks omitted.)

[6] "When the plaintiff did not replead, the court rendered judgment in favor of the defendants on count four of the complaint." *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 132 Conn. App. 88 n.3.

[7] Under the prevention doctrine, if a party to a contract "prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, or to the performance of a return promise, [that party] is not relieved of the obligation to perform, and may not legally terminate the contract for nonperformance." (Footnote omitted.) 13 R. Lord, Williston on Contracts (4th Ed. 2000) § 39:3, pp. 517–18.

[8] In support of their motion for summary judgment as to the counts of the complaint alleging unjust enrichment and quantum meruit, the defendants maintained that those counts failed as a matter of law because, inter alia, they were based "solely . . . [on] the same subject matter that form[ed] the basis of [the plaintiff's] breach of contract claim" and that the contract itself "set the terms of [the parties'] performance . . . ." With respect to the count alleging that the parent company guaranteed the performance of Brown & Brown, the parent company asserted that that claim failed because it was wholly derivative of the plaintiff's meritless claim against Brown & Brown.

[9] With respect to the remaining counts of the complaint alleging unjust enrichment, quantum meruit and guaranty, the trial court agreed with the defendants' arguments; see footnote 8 of this opinion; and, accordingly, granted the defendants' motion for summary judgment as to those counts, as well.

[10] In support of this argument, the defendants relied on comment (a) to § 245 of the Restatement (Second) of Contracts, which provides in relevant part: "Where a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing . . . may require some cooperation on his part, either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence. Under § 235 (2), non-performance of that duty when performance is due is a breach. . . . The rule stated in this [s]ection only applies, however, where the lack of cooperation constitutes a breach, either of a duty imposed by the terms of the agreement itself or of a duty imposed by a term supplied by the court." (Citations omitted.) 2 Restatement (Second), Contracts § 245, comment (a), p. 258 (1981); see also id., § 245, p. 258 ("[w]here a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused").

[11] These other claims, which also pertain to the breach of contract count, are not at issue in this appeal.

[12] The defendants also note that the plaintiff, in its petition for certification to appeal to this court, presented two questions: (1) whether the Appellate Court improperly raised the prevention issue sua sponte; and (2) whether the Appellate Court properly resolved that issue. Upon granting the plaintiff's petition for certification, however, we certified one question, namely: "Did the Appellate Court properly [uphold] the trial court's granting of the defendants' motion for summary judgment?" *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 303 Conn. 923. The defendants contend that the question that this court certified encompasses

only the second issue raised by the plaintiff in its petition for certification. We disagree. Rather, we conclude that the certified question is broad enough to encompass both issues. See, e.g., *State* v. *Ryder*, 301 Conn. 810, 820 n.6, 23 A.3d 694 (2011) (broadly worded certified question encompassed claim that was briefed by appellant and discussed at oral argument before this court).

[13] As we discuss more fully hereinafter, these exceptions include sua sponte consideration of issues pertaining to subject matter jurisdiction, constitutional violations and plain error, and matters of overriding public importance.

[14] See R. Martineau, supra, 40 Vand. L. Rev. 1027–28 ("American appellate procedure followed the writ of error model rather than the appeal in equity"). Before the rules of practice were amended in July, 1979, appeals in this state were brought by way of an assignment of errors. See Practice Book (1978–1997) § 3031, historical footnotes, p. 333 ("[a]t the time of its repeal in 1979, [Practice Book §] 3031 [provided] . . . [i]f neither a finding of facts nor a transcript is needed to present properly the questions raised on appeal, the appellant shall file an assignment of errors with the appeal" [internal quotation marks omitted]). The rules of practice in effect before July 1, 1979, also provided that "[t]he [S]upreme [C]ourt shall not be bound to consider any errors on an appeal unless they are specifically assigned or claimed," a rule that had been "substantially unchanged since 1930" and that had been followed as a matter of practice since at least the late nineteenth century. (Internal quotation marks omitted.) W. Horton & K. Bartschi, Connecticut Practice Series: Rules of Appellate Procedure (2013–2014 Ed.) § 60-5, historical note, p. 27. Thus, rules of appellate procedure in this state are based generally on the writ of error model.

[15] Under this rule, claims not raised in the trial court or briefed on appeal are deemed waived. See B. Miller, supra, 39 San Diego L. Rev. 1265–66.

[16] "When a court rules on an issue not raised by the parties, it does not promote respect either for the [c]ourt's adjudicatory process or for the stability of its decisions. . . . [A] . . . court [that] remakes disputes entirely on its own is not likely to be regarded favorably." (Footnotes omitted; internal quotation marks omitted.) A. Milani & M. Smith, supra, 69 Tenn. L. Rev. 280; see also id., 280 n.194 ("[The] legitimacy of [judicial review] could be eroded if judges were perceived as pursuing their own agendas by seeking out issues to consider. Viewed in this way, the refusal to make sua sponte consideration a routine practice is an important doctrine of judicial restraint." [Internal quotation marks omitted.]). But see A. Frost, supra, 59 Duke L.J. 502–503 (arguing that judicial issue creation does not jeopardize judicial neutrality).

[17] The plaintiff in the present case has not identified, and our research has not revealed, any reason why the power of federal courts to raise unpreserved issues sua sponte is broader than the power of state courts. Indeed, the case and controversy requirement of article three, § 2, of the United States constitution places limits on the power of federal courts that do not apply to state courts. Compare *United States National Bank of Oregon* v. *Independent Ins. Agents of America, Inc.*, supra, 508 U.S. 446 (intermediate appellate court had power to raise issue sua sponte because it "had before it a real case and controversy extending to that issue"), with *State* v. *McElveen*, 261 Conn. 198, 212, 802 A.2d 74 (2002) ("[U]nlike the United States constitution, the state constitution does not confine the judicial power [of this state] to actual cases and controversies. Rather, the jurisdiction of [the] courts shall be defined by law. Conn. Const., art. V, § 1." [Internal quotation marks omitted.]). See generally A. Frost, supra, 59 Duke L.J. 460 (in federal courts, rule against judicial issue creation "has at least a passing relationship to [the federal constitution's] case or controversy requirement [in article third, § 2]").

[18] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Roger B.*, 297 Conn. 607, 613–14, 999 A.2d 752 (2010).

There is authority for the proposition that this court will review unpreserved constitutional claims only in *exceptional circumstances. New Haven* v. *Bonner*, supra, 272 Conn. 498 ("[o]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court" [internal quotation marks omitted]). Our research has revealed no case, however, in which a reviewing court concluded that the *Golding* conditions for review were met but nevertheless declined to review the claim. It is apparent, therefore, that, if the *Golding* conditions for review are met, exceptional circumstances exist, and the court should review the claim.

[19] See, e.g., *State* v. *Ray*, 290 Conn. 602, 608 n.7, 966 A.2d 148 (2009) (reviewing defendant's unpreserved, statutory interpretation claim that was intertwined with defendant's constitutional claim when resolution of claim could have obviated need to review constitutional claim, it would have been futile for defendant to raise claim in trial court because he was asking this court to overrule its precedent, record was adequate for review, and state did not object to review); *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 568–70, 916 A.2d 5 (2007) (reviewing unpreserved, alternative ground for affirmance when undisputed, dispositive fact on which both parties relied was established after trial court rendered judgment, issue involved pure question of law, record was adequate for review, and issue was fully briefed); *Reardon* v. *Windswept Farm, LLC*, supra, 280 Conn. 165 (when there was intervening change in law, "the interest in the uniform application of the plainly governing law warrant[ed] [the court's] consideration of a claim beyond the narrow issue that was before the trial court"); *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 868 n.10, 675 A.2d 441 (1996) ("[The] claim [that the plaintiff was not bound by a previous trial court ruling under the principle of res judicata] was raised for the first time at oral argument in this court. Because [the defendant] has not argued that we should refrain from considering the claim, however, we shall address it."); *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 507, 636 A.2d 1342 (1994) (reviewing unpreserved, statutory interpretation claim under "general power of supervision and control over proceedings on appeal" in light of, inter alia, "the adequate record . . . and the significance of the issue to . . . the parties"); *State* v. *Henning*, 220 Conn. 417, 427, 599 A.2d 1065 (1991) ("[Because] the defendant neither requested an instruction on burglary in the third degree as a lesser included offense of felony murder nor took an exception to the trial court's charge, this court is not bound to review [his] claim. For the purposes of this appeal, however, [the court] will treat the issue as properly raised below." [Footnote omitted.]); *State* v. *Badgett*, 200 Conn. 412, 432 n.10, 512 A.2d 160 (reviewing unpreserved, alternative ground for upholding ruling on admissibility of evidence that was alleged to have been illegally seized because "[t]his court is not limited in its disposition of a case to claims raised by the parties and has frequently acted sua sponte [on] grounds of which the parties were not previously apprised" [internal quotation marks omitted]), cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986); *Riccio* v. *Abate*, 176 Conn. 415, 418 n.1, 407 A.2d 1005 (1979) (addressing, sua sponte, unpreserved issue relating to trial court procedure that did not affect outcome of case "because of its importance"); *Scott* v. *General Iron & Welding Co.*, 171 Conn. 132, 139, 368 A.2d 111 (1976) (reviewing unpreserved claim that trial court improperly had shifted burden of proof because both parties had briefed it); *Kavanewsky* v. *Zoning Board of Appeals*, 160 Conn. 397, 401, 279 A.2d 567 (1971) (addressing unpreserved claim that defendant's action was arbitrary, illegal and in abuse of discretion because, although this court is "not bound to consider a matter which is not contained in an assignment of error relating to overruling claims of law unless it is properly raised . . . [this court has] on occasion considered a question not so raised, not by reason of the appellant's right to have it determined but because . . . in the interest of public welfare or of justice between the parties it ought to be done"); *State* v. *Gelinas*, 160 Conn. 366, 367, 279 A.2d 552 (1971) (reviewing unpreserved evidentiary claim when parties and trial court "were laboring under the misapprehension" of governing law); *Donovan* v. *Davis*, 85 Conn. 394, 399, 82 A. 1025 (1912) (although claim that trial court improperly ordered ballot boxes opened for recount after election was unpreserved, "the public character of the case and the practical importance of the [unpreserved] question involved lead [the court] to briefly discuss it [on] the merits"); *Wiegand* v. *Wiegand*, 129 Conn. App. 526, 533, 21 A.3d 489 (2011) (unpreserved claim of judicial bias did not warrant plain error review, but court reviewed claim on ground that such claims "strike at the very core of judicial integrity and

implicate the basic concepts of a fair trial"); *State* v. *Malave*, 47 Conn. App. 597, 605 n.5, 707 A.2d 307 (1998) (addressing unpreserved claim "that the trial court violated a supervisory directive of [this] [c]ourt"), aff'd, 250 Conn. 722, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000); see also W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) § 307, pp. 388–90 nn. 1–19 (listing cases in which this court has reviewed unpreserved claim or claims). This court also occasionally has reviewed potentially unpreserved claims without deciding whether they were preserved when the party raising the claim could not prevail. See, e.g., *State* v. *Gaines*, 257 Conn. 695, 713 n.13, 778 A.2d 919 (2001); *State* v. *Haase*, 243 Conn. 324, 338 n.12, 702 A.2d 1187 (1997), cert. denied, 523 U.S. 1111, 118 S. Ct. 1685, 140 L. Ed. 2d 822 (1998); *State* v. *Henning*, supra, 427; see also *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, supra, 868 n.10 (addressing unpreserved claim without explanation when party raising claim could not prevail).

[20] See, e.g., *State* v. *Velasco*, 253 Conn. 210, 218–19 n.9, 751 A.2d 800 (2000) (invoking plain error doctrine to review unpreserved claim that involved strictly legal question of statutory interpretation and that required no finding of facts when both parties had opportunity to present arguments regarding their proposed statutory interpretation and neither party would be prejudiced by court's review of claim); *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982) (reviewing claim of judicial bias under plain error doctrine because judicial bias "strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary" [internal quotation marks omitted]); *Argentinis* v. *Fortuna*, 134 Conn. App. 538, 539–40, 559, 39 A.3d 1207 (2012) (reviewing unpreserved claim that trial court's damages award was improper under plain error doctrine and reversing award on ground that reviewing court "may reverse . . . the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record . . . or that the decision is otherwise erroneous in law" [internal quotation marks omitted]); *Jaser* v. *Jaser*, 37 Conn. App. 194, 196–97 n.2, 655 A.2d 790 (1995) ("these [unpreserved] issues [involving the nonparticipation of counsel for the children in a custody matter] warrant[ed] plain error review as they implicate[d] interests of public welfare and fundamental justice between the parties"); *Madison Hills Ltd. Partnership II* v. *Madison Hills, Inc.*, 35 Conn. App. 81, 84, 644 A.2d 363 ("[p]lain error review [was] warranted . . . because [1] the [unpreserved issue of statutory interpretation involved] . . . a question of law, [2] neither party [was] prejudiced because the interpretation of the statutes [did] not require further fact finding by the trial court, and [3] both parties . . . had an opportunity to present written arguments regarding the statutes in their supplemental briefs, ordered and submitted after oral argument"), cert. denied, 231 Conn. 913, 648 A.2d 153 (1994); *In re Shana M.*, 26 Conn. App. 414, 416, 600 A.2d 1385 (1992) (reviewing under plain error doctrine unpreserved claim that trial judge had improper ex parte communication with counsel "because [the claim] implicate[d] the ethical conduct of the trial [judge] and reflect[ed] on the entire process of justice"); *Golembeski* v. *Metichewan Grange No. 190*, 20 Conn. App. 699, 701, 569 A.2d 1157 (reviewing, under plain error doctrine, unpreserved claim that trial court improperly directed verdict for defendant attorney, who allegedly had interfered with plaintiff's business expectancy by giving advice to client because "the claimed error implicate[d] the fairness and integrity of, and public confidence in, judicial proceedings and attorneys"), cert. denied, 214 Conn. 809, 573 A.2d 320 (1990); *Daley* v. *Gaitor*, 16 Conn. App. 379, 383, 547 A.2d 1375 (reviewing unpreserved claim that trial court improperly directed verdict for defendants because "standard for . . . appellate discretion [to review an unpreserved claim under the plain error doctrine] is whether the issue is of importance to the development of the law of the state, is vital to the proper resolution of the case, and was sufficiently presented to the trial court initially, albeit not . . . [properly preserved], so that appellate consideration of it does not amount to ambuscade of the trial court"), cert. denied, 209 Conn. 824, 552 A.2d 430 (1988).

[21] See *State* v. *Myers*, supra, 290 Conn. 278; *State* v. *Pierce*, 269 Conn. 442, 849 A.2d 375 (2004). In *Myers*, the state appealed to this court from the judgment of the Appellate Court after that court applied the plain error rule to review an unpreserved claim that the trial court had failed to comply with the rules of practice. See *State* v. *Myers*, supra, 284–85. The Appellate Court agreed with the state that the trial court had committed plain error because that court had failed "to implement properly the mandatory provisions of clearly applicable rules of practice." (Internal quotation marks

omitted.) Id., 285. This court concluded that, although the trial court improperly had failed to comply with the rules of practice, "the Appellate Court abused its discretion in vacating the defendant's sentence [under the plain error doctrine] because the error . . . did not result in manifest injustice." (Internal quotation marks omitted.) Id., 289–90.

In *Pierce*, the state appealed to this court from the judgment of the Appellate Court, claiming, inter alia, that the Appellate Court improperly had raised, sua sponte, an issue involving statutory interpretation that had not been raised at trial and that had not been addressed in the parties' original briefs to the Appellate Court. See *State* v. *Pierce*, supra, 269 Conn. 449–53. The Appellate Court concluded that, pursuant to this court's decision in *State* v. *Velasco*, 253 Conn. 210, 751 A.2d 800 (2000), in which this court determined that "plain error review was warranted because [t]he application and interpretation of [a statute] is strictly a question of law that requires no finding of facts, the review might result in the reversal of a miscarriage of justice, is in the interest of public welfare or of justice between the parties, and neither party is prejudiced by [this court's] decision to invoke the doctrine because each was afforded an opportunity to present arguments regarding the interpretation of [the statute]"; (internal quotation marks omitted) *State* v. *Pierce*, supra, 450–51; the unpreserved issue was reviewable under the plain error doctrine. See id., 450. This court concluded that the Appellate Court improperly had invoked the plain error doctrine because "[p]lain error requires reversal only in truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings"; (internal quotation marks omitted) id., 453; and that the issue did not meet that standard. Id.

[22] See *State* v. *Cobb*, supra, 251 Conn. 343 n.34 ("[i]n addition [to engaging in plain error review], we have on occasion employed our supervisory power, in both capital and noncapital cases, to review unpreserved claims"); id., 344 n.34 ("[u]nder [*Golding*] . . . the plain error doctrine, and our supervisory power, there is authority capacious enough to rectify any constitutional or nonconstitutional trial court errors that affect the outcome of a criminal case, capital or otherwise, and that, under those doctrines, require the reversal of the judgment" [citation omitted]).

[23] Any other rule would result in a remand for further proceedings in or findings by the trial court whenever a claim is raised for the first time on appeal and the record is inadequate for appellate review of that unpreserved claim. Under such a methodology, parties routinely would be entitled to retry cases merely by raising a new claim or claims on appeal. As we previously have observed, this wholly unworkable approach "would promote ceaseless litigation by discouraging parties from raising claims in a timely manner, thereby seriously undermining the efficient administration of justice." *State* v. *Brunetti*, 279 Conn. 39, 55 n.27, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007).

[24] Fundamental fairness dictates that a party must be afforded the opportunity to address an unpreserved claim on appeal. E.g., A. Milani & M. Smith, supra, 69 Tenn. L. Rev. 267–69 (arguing that court's failure to provide opportunity to respond to unpreserved claims raised by party or by court sua sponte is inconsistent with principles of due process); see also B. Miller, supra, 39 San Diego L. Rev. 1288–92. Consequently, "[w]e have long held that, in the absence of a question relating to subject matter jurisdiction, the [reviewing] [c]ourt may not reach out and decide a case before it on a basis that the parties never have raised or briefed. . . . To do otherwise would [unfairly] deprive the parties of an opportunity to present arguments regarding those issues." (Internal quotation marks omitted.) *Sequenzia* v. *Guerrieri Masonry, Inc.*, 298 Conn. 816, 821, 9 A.3d 322 (2010).

[25] We recognize that there always will be some form of harm when the reviewing court decides an appeal on the basis of an issue that was not raised in the trial court. See R. Martineau, supra, 40 Vand. L. Rev. 1038 ("By allowing [an] issue to be raised for the first time on appeal, appellate courts ignore the most obvious prejudice to the appellee: the taking away of a judgment in the appellee's favor. Defeat rather than victory is the ultimate prejudice."); id., 1038–39 ("an appellate court ignores a rule long considered basic to the adversary process in an effort to come to the 'right' result when it decides a case on a legal issue not raised in the trial court"); cf. id., 1038 ("[f]orcing the appellee to show prejudice from consideration of a new issue places the appellee in an almost impossible position because it asks the appellee to speculate on what might have been different had the issue been raised in the trial court"). Moreover, deciding the case in such a manner deprives the losing party of the opportunity, while the case is still pending in the trial court, to evaluate the issue that was raised sua sponte and

possibly to settle the case at that time, prior to any appeal. In addition, appellate review of an unpreserved claim could result in wasted effort by the parties and the trial court, increased work for the reviewing court, and additional work for the parties and the trial court if the case is remanded for further proceedings on the basis of the unpreserved claim. See B. Miller, supra, 39 San Diego L. Rev. 1267. These considerations, however, merely explain why review of unpreserved claims is disfavored; they have not operated to categorically bar review of such claims. Indeed, if these considerations were deemed so compelling as to constitute an absolute bar to a reviewing court's consideration of an unpreserved claim, the court never could raise an issue sua sponte. Accordingly, we conclude that, when considering whether to review an unpreserved claim, the reviewing court must weigh these potential harms against the benefits to be gained by reviewing the claim under specific, exceptional circumstances.

[26] For example, with respect to the requirement that parties must be given an opportunity to brief an issue that the reviewing court has raised sua sponte, that requirement, which is mandated by principles of fundamental fairness, does not speak to the unrelated principle of adversarial justice, pursuant to which the parties, rather than the courts, are responsible for framing the issues. See, e.g., B. Miller, supra, 39 San Diego L. Rev. 1310 ("[n]otice and an opportunity to be heard before deciding [an issue] sua sponte does not resolve the question of when a court should raise an issue sua sponte—it just makes the unequal application of waiver more fair to the litigants," and courts should adopt consistent rules as to when intervention in adversary process is appropriate).

[27] We recognize that, although this condition eliminates the unfairness to the opposing party, it does not prevent an ambuscade of the trial court. Nevertheless, because the trial court hardly can be criticized for not addressing an issue that was not raised, we conclude that this consideration should be given relatively little weight under these circumstances.

[28] Reviewing an unpreserved claim when the party that raised the claim cannot prevail is appropriate because it cannot prejudice the opposing party and such review presumably would provide the party who failed to properly preserve the claim with a sense of finality that the party would not have if the court declined to review the claim.

[29] See *Boynton* v. *Virginia*, 364 U.S. 454, 457, 81 S. Ct. 182, 5 L. Ed. 2d 206 (1960) (addressing statutory claim that was not raised on appeal in order to avoid deciding constitutional issue); *Neese* v. *Southern Railway Co.*, 350 U.S. 77, 78, 76 S. Ct. 131, 100 L. Ed. 60 (1955) ("we follow the traditional practice of this [c]ourt of refusing to decide constitutional questions when the record discloses other grounds of decision, whether or not they have been properly raised . . . by the parties").

[30] We recognize that, in some of the cases cited in the text of this opinion, there was no objection to review of the unpreserved claim. We believe, however, that review would have been appropriate in all of these cases, even if a party had objected.

[31] A number of commentators have remarked on the difficulty of formulating clear and consistent rules governing appellate review of unpreserved claims. See, e.g., R. Martineau, supra, 40 Vand. L. Rev. 1057–58 ("Inconsistency is the hallmark of the various exceptions. For every case that can be found in which an exception to the general rule [that unpreserved claims are not reviewed] is allowed, another exists in which the court refused to permit the exception and enforced the general rule. This is a situation in which the rule is sometimes honored and sometimes breached, with no discernible basis for predicting when one or the other will occur."); see also A. Frost, supra, 59 Duke L.J. 469 ("[the] cases carve out important exceptions to the norm of party presentation, but there has been little attempt by courts and commentators to articulate a theory of judicial power that justifies deviation from the norm"). This difficulty reflects the reality that the decision to review an unpreserved claim is necessarily case specific, and it is impossible to anticipate all of the circumstances that may frame the presentation of an unpreserved claim.

[32] See B. Miller, supra, 39 San Diego L. Rev. 1285 ("Courts have decided cases sua sponte to avoid a 'miscarriage of justice' or to prevent a result 'inconsistent with substantial justice.' Unfortunately, these phrases are almost meaningless, because any time the new issue would affect the result, it could be a miscarriage of justice for the party that lost below not to be permitted to raise the issue." [Footnote omitted.]); id., 1307 ("[e]ither a court must limit its use [of the discretion to review newly raised claims] to the most rare cases or it must recognize that it is either changing its method of appellate review from the adversary process model to the equity model or it is allowing its judges to exercise unbridled discretion"). But see id.,

1307–1308 (arguing that reviewing courts should adopt equity model).

[33] We do not suggest, however, that the reviewing court *must* raise an issue implicating plain error or constitutional error sua sponte if a party itself has failed to do so.

[34] A fortiori, a reviewing court may raise an issue sua sponte that was raised in the trial court but has not been raised on appeal if the interests of justice outweigh the interest in enforcing the procedural rules governing review of unpreserved claims.

The plaintiff in the present case notes that a number of this court's recent decisions have implied that the sole condition for the reviewing court to raise a new issue sua sponte pursuant to its supervisory power is that the court must provide an opportunity for the parties to brief the issue. See *Sequenzia* v. *Guerrieri Masonry, Inc.*, 298 Conn. 816, 821–22 and n.4, 9 A.3d 322 (2010) (rejecting defendant's argument that Appellate Court properly raised issue that had not been raised on appeal pursuant to plain error doctrine because Appellate Court had not invoked that doctrine and, in any event, issue had been raised in trial court, and concluding that Appellate Court improperly decided case on basis of issue not properly raised on appeal without requesting supplemental briefing); *State* v. *Dalzell*, supra, 282 Conn. 715 (Appellate Court improperly decided case on basis of issue that had been raised in trial court but not on appeal without requesting supplement briefing on issue). We agree with the plaintiff that a reviewing court should raise an issue sua sponte only in exceptional cases; see B. Miller, supra, 39 San Diego L. Rev. 1310 (affording parties opportunity to brief issue raised by reviewing court sua sponte renders process more fair to litigants but does not resolve issue of whether it is appropriate, in light of our adversarial system, to decide issues not raised by parties); and we disavow *Sequenzia* and *Dalzell* to the extent that they are inconsistent with this principle. We reject the plaintiff's contention, however, that exceptional circumstances exist only when the claim implicates subject matter jurisdiction, plain error, constitutional error or a matter of public character.

[35] In addition to the exceptional circumstances, previously described in this opinion, that may justify review of an unpreserved claim raised by a party, this court occasionally has raised an issue sua sponte when the parties have misconstrued or overlooked the applicable law and the failure to raise the issue would result in the creation of unsound or questionable precedent or an inconsistency in the law. See, e.g., *State* v. *Helmedach*, 306 Conn. 61, 77, 48 A.3d 664 (2012) (when defendant claimed on appeal that trial court improperly had instructed jury on duress defense, evidence showed that duress had occurred after defendant engaged in criminal conduct, and law was clear that duress that occurs after criminal conduct cannot provide basis for defense, court, sua sponte, ordered supplemental briefing on issue of whether duress defense applied under circumstances of case); see also A. Frost, supra, 59 Duke L.J. 509 ("the rationale for issue creation is at its most powerful when the parties, either intentionally or by mistake, misrepresent the law and ask the court to decide the case on those grounds"). Unless, however, the new issue is so closely intertwined with the issue raised on appeal that the reviewing court cannot avoid addressing it, as it was in *Helmedach*, the reviewing court ordinarily can avoid creating bad precedent when the parties have failed to identify an issue or misconstrued the law by deciding the issue "in accordance with the parties' view of the law, but . . . not[ing] that the parties had failed to raise key issues that might have produced a different holding," thereby signaling "to future litigants to be sure to argue the point." A. Frost, supra, 473; see also id., 509 ("a court has no reason to raise issues that are tangential to or distinct from the claims that the parties have asked the court to decide, because in these cases its opinion will not mislead others or create flawed precedent").

[36] As we have indicated, this court previously has held that, as with unpreserved claims raised on appeal, an appellate court should review unpreserved, alternative grounds for affirmance only in exceptional circumstances. E.g., *Perez-Dickson* v. *Bridgeport*, supra, 304 Conn. 498–99. It has been argued, however, that appellate courts should treat unpreserved, alternative grounds for affirmance more leniently than unpreserved claims seeking to reverse the trial court's judgment in the interests of judicial economy and preserving the finality of judgments. See id., 538–40 (*Palmer, J.*, concurring); see also B. Miller, supra, 39 San Diego L. Rev. 1284 ("[c]ourts are more likely to raise an issue sua sponte to affirm the judgment below, [rather] than to reverse it"). Because this court never has directly addressed the issue of whether unpreserved, alternative grounds for affirmance should be treated the same as unpreserved claims on appeal, we take this opportu-

nity to do so.

[37] The following hypothetical example illustrates this point. Party A prevails against party B in the trial court but only because of an erroneous ruling by the court. Party B then appeals from the trial court's judgment, challenging that ruling. If, however, the trial court's ruling had been correct, party B would have prevailed, and party A would have been required to appeal. As the appellant in such circumstances, party A generally would not be permitted to raise an alternative ground for reversing the judgment of the trial court. In fact, though, party A prevailed in the trial court due to that court's erroneous ruling. If party A, as the prevailing party in the trial court, were to be permitted to raise that same alternative ground on appeal—under that scenario, party A's alternative ground would have been asserted for the purpose of affirming the trial court's judgment—party A would be in a better position than it would have been in if the trial court had ruled, correctly, in party B's favor. This is so because, as we previously indicated, party A, as the party appealing, ordinarily would not be permitted to raise an alternative ground for reversal. We do acknowledge, however, that party A might have proposed the alternative ground in the trial court if, contrary to what actually occurred, the trial court correctly had rejected the ground on which party A relied in that court to support its claim. We note, finally, that, if party A had raised the alternative ground for affirmance in the trial court but failed to raise it on appeal, the principle that claims not raised on appeal are waived would operate to bar a court from reviewing such an issue sua sponte in the absence of exceptional circumstances.

[38] Of course, the record must be adequate for review, and all parties must be provided with an opportunity to address the unpreserved issue.

[39] The plaintiff cites no authority for this proposition.

[40] In fact, in its opinion, the Appellate Court treated the claims as interchangeable. *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 132 Conn. App. 94 n.9 ("[b]ecause the plaintiff did not allege [certain] conduct [by the defendants] in support of its breach of contract claim, the issue of whether such conduct amounted to a prevention of performance was not properly before the trial court"). Moreover, the wording of the Appellate Court's order for supplemental briefing, in which it requested that the parties address the issue of "whether the plaintiff's claim of breach of contract based on Brown & Brown's alleged failure to forward the renewal notice failed as a matter of law because the alleged conduct occurred prior to the date [on] which the parties entered into the [contract]," supports the conclusion that the Appellate Court assumed that the plaintiff's claims under the further assurances provision and under the prevention doctrine were essentially identical, even though the parties and the trial court appear to have treated the claims as distinct.

[41] In other words, the Appellate Court reasonably could have concluded that, even if it agreed with the plaintiff that its claim under the prevention doctrine was not barred because the defendants had not been the sole cause of its failure to renew its insurance license, the claim still would have been barred on the alternative ground that the trial court *already had concluded* that conduct occurring before the parties entered into the contract cannot constitute a breach of contract. Accordingly, the Appellate Court could grant no practical relief.

[42] As the defendants maintain, they could have—and undoubtedly would have—asserted that argument, either in a renewed motion for summary judgment or at the close of the plaintiff's trial evidence, in support of a claim that the plaintiff had failed as a matter of law to establish the applicability of the prevention doctrine. The plaintiff contends, however, that, because the Appellate Court improperly raised the issue sua sponte, the defendants would be prohibited from raising the claim on remand. On the contrary, as we have explained, because the claim arguably implicated the Appellate Court's jurisdiction, the court properly raised it. In any event, the plaintiff has provided no authority for the proposition that a defendant should be barred from raising a valid, legal defense merely because the court had alerted the defendant about that defense.

[43] Specifically, it would be inconsistent to conclude that the plaintiff's claim under the further assurances provision was barred because the defendants' alleged conduct occurred before the existence of the contract, and to conclude, at the same time, that the plaintiff's extremely similar claim under the prevention doctrine was not barred. The plaintiff suggests that, even if the parties and the trial court *mistakenly* believed that the plaintiff's claim under the prevention doctrine was separate and distinct from its claim under the further assurances provision—as we conclude they did—the Appellate

Court was barred from bringing that fact to the attention of the parties. We disagree. Although it may be improper for the reviewing court to raise an issue sua sponte when the parties' misunderstanding of the law relates to an issue that is tangential to or distinct from the claim that was raised on appeal, we have concluded that a reviewing court may raise the issue when the misunderstanding is intertwined with the claim that was raised on appeal and could lead to problematic or inconsistent precedent. See footnote 35 of this opinion. It is evident that the plaintiff's initial claim under the further assurances provision and its claim under the prevention doctrine were closely intertwined because they both are based on the principle of contract law that neither party to a contract will interfere with the performance of the other party. See part II of this opinion.

[44] We note, preliminarily, that the plaintiff could not have been prejudiced by the Appellate Court's decision to raise and decide the issue on which it ordered supplemental briefing if the trial court properly had determined that the plaintiff could not prevail on its contract claim unless the defendants had made it impossible for the plaintiff to comply with the contractual requirement that it maintain its license. We need not address that issue, however, in light of our conclusion that the plaintiff was not unfairly prejudiced by the Appellate Court's consideration of the issue that it raised sua sponte.

[45] The plaintiff alleged in its complaint that "[t]he grounds cited by [the defendants] . . . as '[c]ause' for terminating the [contract did] not constitute a material, actionable breach of the [contract], and Brown & Brown therefore [had] breached the [contract]." Although this allegation effectively raised a disproportionate forfeiture claim pursuant to § 229 of the Restatement (Second) of Contracts, in its opposition to the defendants' motion for summary judgment, the plaintiff relied exclusively on the arguments that the defendants had acted in bad faith, that their termination of the contract was barred by principles of waiver and estoppel, and that termination was barred by the prevention doctrine, and the plaintiff merely made a passing reference to "policies against forfeiture" in support of these other claims. (Internal quotation marks omitted.) Thus, in light of the course of the litigation culminating in the defendants' motion for summary judgment, the plaintiff elected not to pursue its disproportionate forfeiture claim, which would not have required it to prove that the defendants were the cause of its failure to satisfy the condition that it maintain its insurance license.

[46] In addition, the plaintiff never raised this claim of prejudice in the Appellate Court, and, therefore, the Appellate Court had no opportunity to consider it in evaluating the plaintiff's contention that the court should not decide the issue on which it had ordered supplemental briefing. The only alleged prejudice that the plaintiff identified in the Appellate Court was that it would have appealed from the trial court's decision to grant summary judgment on its unjust enrichment count "if the defendants had mounted a legal, as opposed to a factual, challenge to [the plaintiff's] hindrance argument," a claim that the plaintiff has not renewed in this court. Furthermore, the defendants elected not to pursue the defenses that the plaintiff asserts it might have admitted.

[47] Even if the plaintiff were correct that its claim under the prevention doctrine was a new and distinct claim, the defendants reasonably could have argued that the plaintiff was not entitled to raise an entirely new theory of contractual liability in an opposition to a motion for summary judgment.

[48] We note, preliminarily, that the issue of whether conduct that occurrs before a contract is entered into can provide the basis for a claim under the prevention doctrine is a question of law subject to plenary review. See, e.g., *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, 269 Conn. 599, 609, 849 A.2d 804 (2004) ("a rule of substantive contract law . . . involves a question of law to which we afford plenary review" [internal quotation marks omitted]).

[49] We express no opinion as to whether the defendants in the present case engaged in conduct that was wrongful, in and of itself, or what the proper cause of action would have been if they did. We conclude only that the prevention doctrine does not apply to their conduct because it occurred before the contract existed.

[50] See *M West, Inc.* v. *Oak Park Mall, L.L.C.*, supra, 44 Kan. App. 2d 47 ("Conditions precedent to performance under an existing contract arise from the terms of a valid contract and define an event that must occur before a right or obligation matures under the contract. In contrast, conditions precedent to the formation of a contract involve issues of offer and acceptance which precede and determine the formation of a contract."); id. ("most conditions precedent are conditions precedent to *performance* under an

existing contract rather than conditions precedent to *formation* of a contract" [emphasis in original]); id., 48 ("[w]hether conditions are considered prerequisites to formation of a contract or prerequisites to an obligation to perform under an existing agreement is controlled by the intent of the parties").

[51] Moreover, a number of courts have concluded that, contrary to the court's decision in *Dohanyos*, the prevention doctrine does not apply when the formation of a contract is conditioned on an event and a party to the inchoate contract prevents the event from occurring. See, e.g., *Wachtel* v. *National Railroad Passenger Corp.*, supra, 2012 U.S. Dist. LEXIS 11566, *5 (when no contract exists until condition precedent to formation occurs, and party to contract prevents condition from occurring, prevention doctrine does not apply); *Sony Music Entertainment, Inc.* v. *Werre*, supra, 2010 N.Y. Misc. LEXIS 576, *8 (same).

[52] The plaintiff contends for the first time in its reply brief that the Appellate Court improperly determined that it could not prevail on its claim that the defendants had terminated the contract in bad faith because it did not allege bad faith in its complaint. It is well established, however, that this court will not review claims that are raised for the first time in a reply brief. See, e.g., *State* v. *Garvin*, 242 Conn. 296, 312, 699 A.2d 921 (1997) ("the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, [and] that function does not include raising an entirely new claim of error" [internal quotation marks omitted]). Accordingly, we deem this claim to have been waived.